IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RAYMEY VOSS,     PLAINTIFF
#213751

v.     4:19CV00935-JTK

ROBERT LANIUS, et al.     DEFENDANTS

**MEMORANDUM AND ORDER**

**I.   Introduction**

Plaintiff Raymey Voss is an inmate incarcerated at the Lonoke County Detention Facility (Jail), who filed this pro se action pursuant to 42 U.S.C. § 1983, alleging inadequate dental care and treatment. (Doc. No. 2) Defendant Kevin Smith was dismissed on January 23, 2020. (Doc. No. 6)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendants Margie Grigsby and Robert Lanius. (Doc. Nos. 18-20). Plaintiff filed a Response in opposition to the Motion (Doc. No. 22), and Defendants supplemented their Response (Doc. No. 24).

**II.   Complaint**

Plaintiff alleged he placed a sick call request on October 14, 2019, for tooth pain, and the doctor told him he had an abscessed tooth and prescribed antibiotics and pain medication. (Doc. No. 2, p. 4) He placed five additional medical requests about tooth pain from November 21, 2019, through the time he filed his complaint on December 27, 2019. (Id., pp. 4-5) Defendant Lanius responded on November 25, 2019, that he was working on Plaintiff's request, and Defendant Grigsby responded on December 5, 2019, that Plaintiff was scheduled for a dental appointment,

1

but she did not put him on the sick call list to get his pain medications refilled. (Id., p. 5) Grigsby again responded on December 8, 2019, that he had a dental appointment and was on the next sick call list. (Id.) However, when sick call was conducted on December 16, 2019, Plaintiff was told he was not on the list. (Id.) Lanius responded to a grievance on December 23, 2019, that Plaintiff was on the next sick call list, and Plaintiff went to sick call that same day. (Id.)

### III.     Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

#### A.     Official Capacity

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed, because he did not allege that their actions were taken pursuant to an unconstitutional policy, practice, or custom, or any widespread pattern of

unconstitutional conduct. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990).   Defendants provided copies of the Jail medical and dental care policies (Doc. No. 20-6) and grievance policy (Doc. No. 20-1), and Plaintiff presented no evidence of an on-going custom of denying medical/dental care or medication to inmates. Absent such an allegation and proof, the Court finds the monetary claims against Defendants in their official capacities should be dismissed.

    **B.**    **Individual Capacity**

Defendants also ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner.   It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most

favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

Plaintiff was booked into the Jail on May 8, 2018, on a hold for the United States Marshal Service (USMS). (Doc. No. 20-2) According to Plaintiff's medical records (for background purposes), he first complained about dental pain on March 2, 2019, and was seen on March 8, 2019, by a Nurse Practitioner at ARCare. (Doc. No. 20-9, pp. 37-39) The practitioner noted that Plaintiff's teeth were in poor repair and prescribed ibuprofen for pain and a ten-day antibiotic treatment. (Id.) In response to a medical request, Defendant Lanius scheduled Plaintiff an appointment with an outside practitioner's dental office on April 15, 2019. (Doc. No. 20-3, p. 2) Dentist Dr. Shayne Conine encountered difficulty in sufficiently numbing Plaintiff for the necessary work, and Plaintiff refused to communicate with her for her to be able to treat him. (Doc. No. 20-8, Affidavit of Conine) After he used profanity and refused to cooperate, he was escorted out of her office without treatment. (Id.) Defendant Lanius responded to a June 21, 2019 sick call request about tooth pain by stating that he would try and obtain approval for the dentist from the USMS.[2] (Doc. No. 20-3, p. 5) Lanius responded to another request on June 24, 2019, by stating

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

[2] According to Jail Administrator Kristi Flud, non-emergency medical or dental care sought for detainees held at the direction of the United States Marshal Service must be approved prior to taking the detainee to an outside appointment. (Doc. No. 20-1, p. 2) A request is

4

he would add Plaintiff to the doctor's call list. (Id., p. 6) Plaintiff was seen at ARCare on June 25, 2019, and was prescribed ibuprofen and naproxen for pain and given another ten-day round of antibiotics. (Doc. No. 20-9, pp. 29-32)

Plaintiff complained again about swelling and tooth pain on June 29, 2019, and Lanius responded that Plaintiff needed to take all of the antibiotic medication, and that he would be added to the next doctor call. (Doc. No. 20-3, p. 7) Lanius responded to Plaintiff's July 13, 2019, and July 15, 2019 medical requests by stating that he was trying to make an appointment for Plaintiff if the dentist would agree to see him. (Id., pp. 8, 9) He responded to Plaintiff's July 16, 2019 request by stating he sent another request to the USMS about moving Plaintiff so he could get his teeth taken care of. (Id., p. 10) Lanius responded to Plaintiff's July 23, 2019 request by stating that the USMS approved Plaintiff's dental appointment and that Plaintiff would have to cooperate by communicating with the dentist. (Id., p. 12) Dr. Conine extracted two of Plaintiff's teeth on August 7, 2019, with no problems or contraindications for extraction. (Doc. No. 20-8) Plaintiff complained about two other teeth on September 2, 2019, and Defendant Grigsby responded that she would speak with the dentist. (Doc. No. 20-3, p. 13)

Plaintiff's present Complaint concerns the alleged lack of care received beginning October 14, 2019. (Doc. No. 2, p. 4) He submitted a sick call request on that date, and Lanius responded the next day that he placed Plaintiff on the next doctor call list. (Doc. No. 20-3, p. 14) Plaintiff was seen by a nurse practitioner at ARCare the next day, October 15, 2019, and the practitioner gave

---

submitted to the USMS via an electronic form, and a Marshal official approves or defers to a different agency for consideration and returns the form to the Jail. (Id.) If the care is approved, Jail officials contact the medical or dental professional to schedule the appointment.(Id.) In addition, non-emergency appointments are made based on the availability of the medical or dental professional. (Id., pp. 2-3)

Plaintiff an increased dosage of antibiotic for swelling and redness on the lower right side of Plaintiff's mouth. (Doc. No. 20-9, pp. 14-18) Plaintiff submitted a medical request on November 21, 2019, for a dental appointment, and Lanius responded that he was working on it. (Doc. No. 20-3, p. 15) Plaintiff then submitted a Prisoner Medical Request for tooth extraction to the USMS on November 25, 2019. (Doc. No. 20-4)

On December 4, 2019, Plaintiff asked to be put on the call request for medication for his teeth and Grigsby responded that he was scheduled to see the dentist. (Doc. No. 20-3, p. 16) Grigsby also responded to Plaintiff's December 5, 2019 grievance by stating that he was scheduled to see the dentist, and she responded to a sick call request placed that same day that she would add him to the doctor list. (Id., pp. 3, 17) The USMS approved Plaintiff's dental appointment on December 10, 2019, and Lanius made an appointment for Plaintiff to see the dentist on December 19, 2019. (Doc. No. 20-4; Doc. No. 20-10, p. 2). However, Dr. Conine's office called on December 18, 2019, to cancel the appointment due to illness, and could not re-schedule Plaintiff until February 10, 2019. (Doc. No. 20-8; Doc. No. 20-10, p. 2) Plaintiff submitted another sick call request on December 21, 2019, asking to be seen and for a refill of his pain medications. (Doc. No. 20-3, p. 18) Lanius responded by stating that he would be added to the next doctor call list. (Id.) Plaintiff was seen by a Physician's Assistant via telehealth on December 23, 2019, and was prescribed a ten-day course of antibiotics plus ibuprofen for pain and a five-day course of a steroid. (Doc. No. 20-9, pp. 9-13) Plaintiff filed the present complaint on December 27, 2019. (Doc. No. 2) Lanius responded to another medical request Plaintiff submitted on January 14, 2020, by stating that he could not tell him the date of his next appointment, and responded to a grievance that the appointment was made. (Doc. No. 20-3, pp. 19-20) Dr. Conine extracted two more teeth on February 10, 2020, with no contraindications for extraction. (Doc. No. 20-8) Dr. Conine stated in

her affidavit that she did not observe anything at that time which indicated that Plaintiff needed antibiotics after the teeth were extracted, and there was no medical evidence of any detrimental effect caused by any perceived delay in extracting his teeth. (Doc. No. 20-8).

Defendant Lanius was the medical liaison at the Jail and not a medical professional. (Doc. No. 20-10) As such, he was responsible for reviewing non-emergency medical requests and communicating with or facilitating access to medical or dental professionals as needed. (Id.) He also scheduled appointments with outside professionals and arranged for refill and distribution of medications in the Jail. (Id.) Lanius stated that there are three dental offices in Lonoke, Arkansas, but that Dr. Conine was the only local dentist willing to accept and treat detainees in her office. (Doc. No. 24, p. 1) Lanius stated that each time Plaintiff submitted a request related to his tooth pain, he did his best to provide access to medical and dental professionals as soon as he was able. (Doc. No. 20-10, p. 2) He also stated that Voss did not present an emergency need in December 2019, and Lanius was required to obtain the approval of the USMS each time he needed to transport or schedule a dental appointment. (Doc. No. 24) Finally, he did not seek out other dentists after Dr. Conine cancelled the December 2019 appointment, because there was no indication that a delay would impact treatment or that there was a reason to terminate Plaintiff's relationship with Dr. Conine. (Id., p. 2)

Defendant Grigsby also is not a medical professional and assisted the Jail Administrator by collecting requests and passing them to the medical liaison. (Doc. No. 20-11) She also stated she did not purposely delay or deny Plaintiff medical or dental care for any serious needs. (Id.)

Based on Plaintiff's medical records and the Affidavits presented, Defendants state Plaintiff does not provide any evidence that they acted with deliberate indifference to his serious dental need, or that his condition was detrimentally affected by any delay in the care he received.

In Response, Plaintiff takes issue with the fact that he was not on the sick call list for December 16, 2019, despite the fact that Defendant Grigsby told him in response to his December 8, 2019 sick call request that she would add him to the next doctor list. He also complains about the number of medical requests he filed for pain medications and to see the dentist, and that he was never notified that the dentist cancelled the December appointment. He claims both Defendants were responsible for medical treatment and acted with deliberate indifference to his dental needs.

Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In the Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). Therefore, to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that Defendants acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse

to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

In addition, an inmate alleging that a delay in medical treatment constitutes deliberate indifference is required to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)).  If the inmate does not, he fails to raise a genuine issue of fact on an essential element of his claim, and summary judgment is appropriate. Id.  See also Corwin v. City of Independence, MO, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in treating fractured wrist). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

In this particular case, Defendants provide Jail and medical records to show that Plaintiff was treated on numerous occasions for his dental needs and provided pain medications. Both Defendants were medical liaisons, and responsible for scheduling, but were not medical professionals. (Doc. Nos. 20-10, 20-11) Defendant Lanius stated that Plaintiff was treated by contract medical providers for tooth pain in March, June, October, and December 2019, and also by the dentist. (Doc. No. 20-10)   Each time he received a request from Plaintiff related to his tooth pain, Lanius stated he "did his best" to provide access to medical or dental care, and had to rely on the availability of medical and dental professionals who also receive private clients. (Id., p. 2)   It appears that Plaintiff's complaint against Defendant Grigsby centers on a single incident

9

when she allegedly failed to place him on the doctor list, but at the time, Grigsby also acknowledged that Plaintiff had a scheduled appointment with the dentist. (Doc. No. 20-3, p. 16) Although the Court is sympathetic about the delay in seeing the dentist for the second extraction, Plaintiff provided no proof that Defendants were responsible for the delay, or that he suffered a detrimental effect as a result of the delay.[3] According to Dr. Conine's affidavit, when she extracted the second set of teeth in February 2020, Plaintiff did not need antibiotics and there was no medical evidence of a detrimental effect caused by the delay. (Doc. No. 20-8) Therefore, the Court finds Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

### IV.  Conclusion

IT IS, THEREFORE, ORDERED that Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED, and Plaintiff's Complaint is DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 9th day of November, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

[3] While it does not rise to the level of deliberate indifference, the Court questions why Plaintiff was not informed that the December appointment was cancelled by the dental office or why the Jail relied on a single health provider for dental care.